**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **EDUARDO MONTANA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-10-CV-212-KC** |
| | § | |
| **PATRICK R. DONAHOE,** | § | |
| **POSTMASTER GENERAL,** | § | |
| | § | |
| **Defendant**. | § | |

## ORDER

On this day, the Court considered "Defendant's Motion to Dismiss, or in the Alternative,

Motion for Summary Judgment" ("Defendant's Motion"), ECF No. 21, and "Plaintiff's Amended

Motion for Partial Summary Judgment" ("Plaintiff's Motion"), ECF No. 25. For the reasons set

forth herein, Defendant's Motion is **GRANTED** and Plaintiff's Motion is **DENIED** as moot.

## I.    BACKGROUND

Unless otherwise noted, the following facts are undisputed. Plaintiff began employment

with the United States Postal Service ("USPS") in June 1986 as a city letter carrier. Def.'s

Proposed Undisputed Facts ¶ 10, ECF No. 16. As a city letter carrier, the essential functions of

Plaintiff's job are to inspect the vehicle, case the mail, complete change of address cards, scan

delivery confirmations, load the vehicle, and deliver the mail. *Id.* ¶ 12. The physical

requirements of Plaintiff's city letter carrier position are as follows: lifting up to seventy pounds

intermittently, one to three hours a day; sitting for one hour; standing for two to three hours;

walking for five hours; climbing for one hour; bending or stooping for one hour; pushing or

pulling for one hour; twisting for one hour; simple grasping for one hour; fine manipulation for 6.6 hours; reaching above shoulders for 6 to eight hours; and driving a vehicle for two to six hours. *Id.* ¶ 16.

Plaintiff suffered an on-the-job injury in 1998 when he injured his neck and hand after a cabinet fell on him. *Id.* ¶ 36. As a result of this injury, Plaintiff was given a medical restriction which stated he could not lift more than fifteen pounds. *Id.* ¶ 37. Because of this limitation, other city letter carriers were asked to deliver parcels in excess of fifteen pounds for Plaintiff. *Id.* ¶ 38. On June 30, 2008, Plaintiff suffered a second on-the-job injury when a dog attacked him. *Id.* ¶¶ 39-40. As Plaintiff jumped into his vehicle to escape from the dog, he suffered an annular tear in his lower back. *Id.* ¶ 40. As a result of the injury, Plaintiff did not work in July and August of 2008. *Id.* ¶ 42. Upon returning to work in August 2008, Plaintiff's prior restriction was modified to limit the weight he could carry to ten pounds. *Id.* ¶ 43. Plaintiff continued to deliver his entire route until November 2008. *Id.* ¶ 45. In November 2008, Plaintiff complained of pain and was consequently assigned to perform office work. *Id.* ¶ 46. Regina Boutte ("Boutte"), acting station manager at Sunrise Station where Plaintiff worked, made the decision to restrict Plaintiff's duties to office work. *Id.* ¶¶ 47-48.

On December 3, 2008, Plaintiff was examined by a physician who imposed a number of restrictions: lifting or carrying no more than ten pounds; sitting for one hour a day; standing for three hours a day; walking for five hours a day; climbing no hours per day; bending or stooping one hour per day; pulling or pushing one hour per day; simple grasping four hours per day; fine manipulation four hours per day; reaching above the shoulder four hours per day; and driving four hours per day. *Id.* ¶ 50. In addition to the stated physical limitations, Plaintiff's physician

added a hand-written statement which read "No Street Work." *Id.* ¶ 52. Plaintiff inserted the word "Delivery" between the words "Street" and "Work." *Id.* Plaintiff contends that the physician did not want him doing street deliveries because the medications Plaintiff was taking would cause him to lose focus. *Id.* ¶ 54.

In 2008, USPS implemented a formal process known as the National Reassessment Process ("NRP"). *Id.* ¶ 59. The NRP was designed to reassess employees who incurred on-the-job injuries to ensure that they were able to perform their core duties as USPS employees that were within their physical limitations. *Id.* Stevero Garza ("Garza"), Postmaster of the El Paso district, participated in assessments along with the employee, the employee's supervisor, and a union representative. *Id.* ¶¶ 58, 61-62. During the assessment, parties discuss the employee's limitations. *Id.* ¶ 63. The parties try to resolve any disagreements, but Garza has the ultimate decision-making authority. *Id.* When trying to craft a modified duty assignment for an employee, Garza considers factors such as the employee's limitations and the availability of duties that the employee can perform. *Id.* ¶ 64. If an employee feels that the duties assigned exceed his limitations, the union advises the employee to notify his supervisor. *Id.* ¶ 65. If that does not resolve the conflict, the union advises the employee to seek further direction from the relevant physician. *Id.* If the situation remains unresolved, the union advises the employee to contact the Office of Worker's Compensation in the United States Department of Labor ("OWCP"). *Id.* ¶ 66. OWCP has the ultimate authority to determine if an employee's assigned duties exceed their physical limitations, and USPS is obligated to comply with the decision of OWCP. *Id.*

One of Garza's duties as Postmaster is to ensure that all employees on limited-duty status

are performing productive duties within their limitations. *Id.* ¶ 67. While performing

assessments of employees to that end, Garza utilizes a Duty Status Report. *Id.* ¶ 68. A Duty

Status Report is a form filled out by management and an employee's physician. *Id.* ¶ 69. The

left column of the form is filled out by management and specifies the physical requirements to

perform the essential functions of a city letter carrier. *Id.* The employee's physician fills out the

right column, where he lists any physical limitations the employee may have which could impact

the employee's ability to perform his duties. *Id.* The form is intended to provide a physician

with the opportunity to review the physical demands of a particular position and compare them

against an employee's own physical abilities and limitations. *Id.* USPS also has a form called

the Priority for Modified Assignment Worksheet, which sets out proper protocol Garza follows

when looking for available positions for employees on limited duty status. *Id.* ¶ 71.

Garza would schedule a meeting with the affected employee, the employee's supervisor,

and a union official. *Id.* ¶ 76. During the meeting, the group would discuss the employee's

limitations and, utilizing the Priority for Modified Assignment Worksheet, the group would

attempt to find a position for the employee in which the employee could perform productive

work which was within the physical limitations of the employee. *Id.* On December 12, 2008,

Plaintiff was notified that he had a meeting with Boutte and Garza. *Id.* ¶ 77. At the meeting, the

group discussed Plaintiff's physical limitations and decided to transfer Plaintiff's duties at

Sunrise Station to another city letter carrier. *Id.* ¶¶ 81-82. Prior to the meeting, Garza had made

an initial assessment of the positions which might be available for Plaintiff based on his

limitations. *Id.* ¶ 90. Nonetheless, at the meeting, Garza went through the Priority for Modified

Assignment Worksheet with Boutte in an effort to find duties that Plaintiff could perform within

4

his limitations. *Id.* ¶ 91.

The day after the meeting, Plaintiff was offered a modified-duty assignment which consisted of two hours of mail delivery at either the Pebble Hills Station or the Sandy Creek Station and six hours of work performing collections at the main post office. *Id.* ¶ 93. Plaintiff accepted the assignment and did not ask OWCP to evaluate whether the modified duty assignment was consistent with his limitations. *Id.* ¶¶ 94-95. Plaintiff performed work consistent with his modified duties for approximately two weeks, from December 20, 2008, to January 3, 2009. *Id.* ¶ 105. At that point, upon Plaintiff's request a union representative and Boutte identified duties at Sunrise Station, where Plaintiff wished to work, that Plaintiff could perform within his limitations. *Id.* ¶¶ 107, 109. The union representative discussed these duties with Plaintiff and Plaintiff agreed that these duties were acceptable. *Id.* ¶ 110. Once these duties were identified, Boutte approached Garza about the possibility of assigning these duties to Plaintiff, and Garza agreed with the reassignment. *Id.* ¶ 113. On January 5, 2009, Plaintiff was given a formal offer of limited duty which he accepted without reservation. *Id.* ¶ 121. Some duties from Plaintiff's new route were given to another city letter carrier so that Plaintiff could take breaks consistent with his physician's recommendations and his physical limitations. *Id.* ¶¶ 123-24.

After Plaintiff expressed concerns that he could not perform his work within eight hours, Garza instructed Boutte to modify Plaintiff's work assignment to seven hours of work. *Id.* ¶ 137. On several occasions in which Plaintiff was unable to complete delivery of his route within the allotted time, Boutte either instructed Plaintiff to bring back the undelivered mail or assigned another city letter carrier to deliver the mail Plaintiff could not deliver. *Id.* ¶¶ 144-45.

On January 14, 2009, Plaintiff made initial contact with USPS's Equal Employment Opportunity Office ("EEOC"). *Id.* ¶ 1. Plaintiff filed suit on June 9, 2010. Compl. In his Complaint, Plaintiff alleged that Defendant violated the Rehabilitation Act, 29 U.S.C. §§ 701-96l ("Rehabilitation Act"), by failing to engage in an interactive process to find reasonable accommodations for Plaintiff and that Defendant failed to provide reasonable accommodations. Compl. Defendant filed Defendant's Motion, after which Plaintiff filed Plaintiff's Motion. Def.'s Mot.; Pl.'s Mot.

## II.    DISCUSSION

Defendant filed a motion to dismiss, or in the alternative, motion for summary judgment. *See generally* Def.'s Mot. The Court addresses each in turn.

### A.    Defendant's Motion to Dismiss

#### 1.    Standard

Federal courts are courts of limited jurisdiction. *People's Nat'l Bank v. Office of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004). Without jurisdiction conferred by statute, federal courts lack the power to adjudicate claims. *Id.* A party may challenge a district court's subject matter jurisdiction by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Fed. R. Civ. P. 12(b)(1).

A motion to dismiss pursuant to Rule 12(b)(1) must be considered before any other challenge because a court must have jurisdiction before determining the validity of a claim. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). When considering a motion to dismiss for lack of subject matter jurisdiction, the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the

complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "[T]he plaintiff constantly bears the burden of proof that jurisdiction does in fact exist" when jurisdictional facts are controverted. *Id.* Where the motion to dismiss is based on the complaint alone, the court is required to merely decide whether the allegations in the complaint, presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998).

### 2. Jurisdiction over Plaintiff's Rehabilitation Act claim

Defendant contends that this Court lacks jurisdiction to consider Plaintiff's claim for relief under the Rehabilitation Act because the Federal Employees' Compensation Act, 5 U.S.C. §§ 8101-93 ("FECA"), is the exclusive remedy for compensation and benefits resulting from on-the-job injuries and therefore precludes relief, specifically reasonable accommodation, under the Rehabilitation Act. Def.'s Mot. 3-5. Defendant supports his argument by citing to *Meester v. Runyon*, 149 F.3d 855 (8th Cir. 1998). *Id.* Thus, the Court analyzes whether FECA precludes a claim for relief under the Rehabilitation Act where an employee has already received FECA benefits.

Before addressing this issue, the Court first provides basic background on FECA in order to clarify the reasoning underlying its decision. FECA provides compensation for personal injuries that a federal employee "sustained while in the performance of his duty." 5 U.S.C. § 8102(a). "FECA functions as a federal workers' compensation act and provides a substitute for, not supplement to, recovery." *Bennett v. Barnett*, 210 F.3d 272, 276 (5th Cir. 2000). When a federal employee's injury falls within the scope of FECA, FECA is exclusive of any other remedy. *White v. United States*, 143 F.3d 232, 234 (5th Cir. 1998); *Bailey v. United States*, 451

F.2d 963, 965 (5th Cir. 1971). "In enacting [FECA], Congress adopted the principal compromise - the 'quid pro quo' - commonly associated with workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government." *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194 (1983) (citing H.R. Rep. No. 729, 81st Cong., 1st Sess., 14-15 (1949); S. Rep. No. 836, 81st Cong., 1st Sess., 23 (1949), U.S. Code Cong. Serv. 1949, 2125). FECA also requires federal employers to allow injured employees to return to their old positions, or, if they can no longer perform their original duties, to offer them reasonable alternative positions. *See* 5 U.S.C. § 8151(b); 20 C.F.R. § 10.507.

### a.      Section 8128

There are two sections of FECA that could potentially preclude relief for reasonable accommodation under the Rehabilitation Act. *See Prestop v. Hamlett*, No. 99Civ.2747GBD, 2001 WL 363676, at *7 (S.D.N.Y. Apr. 12, 2001) (citing two provisions when discussing jurisdiction); *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 186 (S.D.N.Y. 1999) (citing same two provisions in concluding the court lacked jurisdiction).

First, FECA provides that an action of the Secretary of Labor or his designee is "not subject to review by another official of the United States or by a court by mandamus or otherwise." 5 U.S.C. § 8128(b)(2). When interpreting statutes, courts look first to their plain meaning. *United States v. Olguin*, 643 F.3d 384, 395 (5th Cir. 2011). If the statute's terms are plain and unambiguous, then courts apply their plain meaning. *Id.* (citing *Carcieri v. Salazar*, 555 U.S. 379, 129 S. Ct. 1058, 1063-64 (2009)). FECA provides that the Secretary of Labor may review an award for or against payment of compensation and either: (1) end, decrease, or

increase the compensation previously awarded; or (2) award compensation previously refused or

discontinued. *Id.* § 8128(a)(1)-(2). Subsection (b) clarifies that the action just described "*in*

*allowing or denying payment under this subchapter* is not subject to review . . . by a court." 5

U.S.C. § 8128(b)(2) (emphasis added). These terms are plain and unambiguous, and thus the

Court need not look any further than the text of § 8128 to discern its meaning. *See Olguin*, 643

F.3d at 395. According to § 8128, FECA prohibits review of decisions made by the Secretary of

Labor or a designee concerning payment, nothing more. *See Benton v. United States*, 960 F.2d

19, 22 (5th Cir. 1992) (per curiam) ("§ 8128(b) prohibits review only of compensation decisions

wholly within the discretion of the Secretary of Labor"). Because Plaintiff is not challenging a

decision by the Secretary regarding compensation he was paid under FECA, § 8128 does not

deprive this Court of jurisdiction to consider Plaintiff's claim for reasonable accommodation

under the Rehabilitation Act.

### b.      Section 8116(c)

Second, FECA provides that

> The liability of the United States or an instrumentality thereof under this
> subchapter or any extension thereof with respect to the injury or death of an
> employee is exclusive and instead of all other liability of the United States or the
> instrumentality to the employee, his legal representative, spouse, dependents, next
> of kin, and any other person otherwise entitled to recover damages from the
> United States or the instrumentality because of the injury or death in a direct
> judicial proceeding, in a civil action, or in admiralty, or by an administrative or
> judicial proceeding under a workmen's compensation statute or under a Federal
> tort liability statute.

5 U.S.C. § 8116(c).

Looking at § 8116(c)'s plain and unambiguous meaning, *see Olguin*, 643 F.3d at 395, FECA

limits United States's tort liability for injuries or death of its employees to compensation awarded

under FECA.  5 U.S.C. § 8116(c).  In fact, the Fifth Circuit has interpreted § 8116(c) as a limit

on the United States' tort liability.  *See, e.g., Jenkins v. United States*, 59 F.3d 1242, at *2 (5th

Cir. 1995) (unpublished table) (FECA "is intended to serve as a substitute for, rather than a

supplement to a tort suit") (citing *Bailey*, 451 F.2d at 965).

However, in this case Plaintiff seeks reasonable accommodation under the Rehabilitation

Act, not damages from the United States based on tort liability.  Because Plaintiff seeks a

different remedy based on a different theory of recovery, § 8116(c) does not prohibit Plaintiff's

claim.

To the extent that § 8116(c) is ambiguous as to whether it prohibits claims for reasonable

accommodation under the Rehabilitation Act, the Court considers FECA's legislative history to

elucidate its provisions.  *See In re Rogers*, 513 F.3d 212, 225-26 (5th Cir. 2008) (if after applying

standard canons of statutory construction a statute's terms are ambiguous, courts turn to

legislative history).  The legislative history confirms § 8116(c)'s plain meaning discussed above:

> Workmen's compensation laws, in general, specify that the remedy therein
> provided shall be the exclusive remedy.  *The basic theory supporting all*
> *workmen's compensation legislation is that the remedy afforded is a substitute for*
> *the employee's (or dependent's) former remedy at law for damages against the*
> *employer*.  With the creation of corporate instrumentalities of Government and
> with the enactment of various statutes authorizing suits against the United States
> for tort, new problems have arisen.  Such statutes as the Suits in Admiralty Act,
> the Public Vessels Act, the Federal Tort Claims Act and the like, authorize in
> general terms the bringing of civil actions for damages against the United States.
> The inadequacy of the benefits under the Employees' Compensation Act has
> tended to cause federal employees to seek relief under these general statutes.
> Similarly, corporate instrumentalities created by the Congress among their powers
> are authorized to sue and be sued, and this, in turn, has resulted in filing of suits
> by employees against such instrumentalities based upon accidents in employment.
>     This situation has been of considerable concern to all Government
> Agencies and especially to the corporate instrumentalities.  Since the proposed
> remedy would afford employees and their dependents a planned and substantial

protection, to permit other remedies by civil action or suits would not only be unnecessary, but would in general be uneconomical, from the standpoint of both the beneficiaries and the Government.
. . . .
*The saving to the Government by the elimination of costly and needless claims and litigation under the Federal Tort Claims Act, Suits in Admiralty Act, Public Vessels Act, and the like, which presently weigh heavily upon the Government and involve considerable expense to defend will be eliminated, offsetting in substantial part the increased cost in compensation benefits*.

S. Rep. No. 81-836, 81st Cong., 1st Sess. (1949), *reprinted in* 1949 U.S.C.C.A.N. 2125, 2136, 2143 (emphasis added).

FECA's legislative history, therefore, confirms that FECA was intended to be a substitute for suits against the United States for tortious injury as authorized by statutes such as the Federal Tort Claims Act. The Rehabilitation Act, however, prevents discrimination based on disability, and therefore is distinct from suits authorizing recovery in tort against the Untied States.

The Court finds that neither § 8128(b) nor § 8116(c) operate as a jurisdictional bar for courts to consider claims for reasonable accommodation based on disability discrimination under the Rehabilitation Act.

      **c.**      **The *Meester* case**

Defendant supports his position that FECA denies this Court jurisdiction to hear Plaintiff's Rehabilitation Act claim for reasonable accommodation primarily by citing to the Eighth Circuit's opinion in *Meester v. Runyon*, 149 F.3d 855 (8th Cir. 1998). Def.'s Mot. 5. Meester, a long term employee of USPS, developed carpal tunnel syndrome, received surgery, and was awarded benefits pursuant to FECA. *Meester*, 149 F.3d at 855-56. Meester could not perform her former job because of a partial permanent impairment affecting twenty-five percent of her upper extremities. *Id.* at 856. USPS offered several limited duty positions, and Meester's

doctor informed USPS that it would be helpful for Meester to have two consecutive days off. *Id.*

However, because Mondays and Saturdays were its busiest days, USPS responded that it would

be unable to offer two consecutive days off. *Id.* After reviewing the relevant files, the

Department of Labor concluded that a proposed position was consistent with Meester's physical

limitations and therefore directed Meester to accept the position or lose her FECA benefits. *Id.*

Meester filed suit, claiming, inter alia, that USPS violated the Rehabilitation Act in failing to

adequately accommodate her disability. *Id.*

On appeal, the Eighth Circuit affirmed the district court's granting summary judgment in

favor of USPS finding that FECA denied the court jurisdiction to consider Meester's claim for

reasonable accommodation under the Rehabilitation Act. *Id.* at 856-57. The court found that

FECA is the exclusive remedy for workplace injuries, and since the Department of Labor found

Meester's alternate position suitable, reviewing such a decision to determine whether the

alternate position offered reasonable accommodations would violate § 8128(b)'s prohibition

against judicial review of compensation decisions. *Id.* at 857. The court held "that a frustrated

FECA claimant cannot secure judicial review of a FECA compensation decision by claiming that

the Rehabilitation Act entitles her to accommodation in performing an alternative position

approved by the Department of Labor when the claim is predicated upon the same illness or

injury that gave rise to the Department of Labor's initial decision." *Id.*

*Meester* is inapposite because Plaintiff did not appeal the suitability of the alternative

position to OWCP, so the Secretary of Labor never rendered a decision, as was the case in

*Meester*. Furthermore, to the extent *Meester* might be similar to the instant case, as an Eighth

Circuit opinion, *Meester* is not binding on this Court, and the Court finds it unpersuasive and

declines to adopt its reasoning. First, the court in *Meester* cited § 8128 as prohibiting review of the Department of Labor's determination that Meester's alternate position was consistent with Meester's physical limitations. *Id.* However, the plain text of § 8128(b) does not support that proposition. On the contrary, as discussed above, § 8128(b) expressly limits its preclusion of judicial review to an "action of the Secretary . . . in allowing or denying a payment." *See* 5 U.S.C. § 8128(b). A determination that an alternate position is consistent with an employee's physical limitations is not the same as a decision to allow or deny payment to an employee. Since § 8128(b) only proscribes review of the latter, the Court sees no reason to extend § 8128(b)'s prohibition of judicial review to the former.

Second, adopting the holding in *Meester* leads to an untenable and illogical outcome with respect to whether an employee seeks a decision from the Department of Labor regarding the suitability of an alternate position. A FECA claimant may appeal an employer's decision regarding compensation and benefits, including the suitability of an alternate position, to OWCP. *See* 20 C.F.R. § 10.125 (describing the procedure OWCP follows in rendering a decision regarding FECA coverage). The court in *Meester* expressly held "that a frustrated FECA claimant cannot secure judicial review of a FECA compensation decision by claiming that the Rehabilitation Act entitles her to accommodation in performing an alternative position *approved by the Department of Labor* when the claim is predicated upon the same illness or injury that gave rise to the Department of Labor's initial decision." *Meester*, 149 F.3d at 857 (emphasis added). The holding is therefore premised upon the alternate position being approved by the Department of Labor, as was the case in *Meester*. Hence, it appears that *Meester* would permit a Rehabilitation Act claim for reasonable accommodation to proceed where a plaintiff has not

sought review from OWCP regarding the suitability of an alternate position but would prohibit

the same claim where a plaintiff has sought a suitability determination from OWCP. The Court

sees no reason to distinguish between these two classes of plaintiffs regarding the right to sue for

reasonable accommodation because one class appealed the decision of their employer and the

other did not. FECA itself provides no authority for such a cutting off of rights.

Third, no published circuit court case has followed *Meester*. In fact, the great weight of

authority holds that recovery of FECA benefits does not preclude subsequent claims for

discrimination. *See, e.g., Nichols v. Frank*, 42 F.3d 503, 515-16 (9th Cir. 1994), *abrogated on

other grounds as recognized in Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 955 (9th Cir. 1999)

(holding that the plaintiff was entitled to both FECA benefits and Title VII recovery); *Miller v.

Bolger*, 802 F.2d 660, 663-64 (3d Cir. 1986) (holding the same); *Fowler v. Potter*, No. C 06-

04716 SBA, 2008 WL 2383073, at *10-11 (N.D. Cal. June 9, 2008) (holding that the receipt of

FECA benefits did not preclude claims under the Rehabilitation Act for failure to accommodate);

*Latham v. Brownlee*, No. CIVASA03CA0933FBNN, 2005 WL 578149, at *6 (W.D. Tex. Mar.

3, 2005) (holding that FECA did not bar recovery under Title VII); *Almaguer v. White*, No.

Civ.A. SA01CA1103-NN, 2002 WL 31396123, at *2 (W.D. Tex. Sept. 13, 2002) ("While FECA

does not completely preempt other relief available to federal employees under anti-discrimination

federal statutes such as Title VII and the Rehabilitation Act, FECA nevertheless provides the

exclusive remedy for injuries which derive solely from compensation decisions made by the

Secretary of Labor."); *Morris v. Roche*, 182 F. Supp. 2d 1260, 1275-78 (M.D. Ga. 2002)

(plaintiff's receipt of FECA benefits did not bar subsequent claim under Rehabilitation Act based

on the same injury that led to FECA benefits); *Taylor v. Sec'y of Navy*, 852 F. Supp. 343, 351-52

(E.D. Pa. 1994) (holding plaintiff's receipt of FECA benefits did not preclude recovery under the Rehabilitation Act), *aff'd mem.*, 61 F.3d 896 (3d Cir. 1995); *Johnson v. Sullivan*, 764 F. Supp. 1053, 1063 (D. Md. 1991) (holding plaintiff's receipt of FECA benefits did not preclude recovery under Rehabilitation Act or Title VII); *George v. Frank*, 761 F. Supp. 256, 258-59 (S.D.N.Y. 1991) (plaintiff's receipt of FECA benefits did not preclude relief under Title VII); *Metz v. United States*, 723 F. Supp. 1133, 1135-36 (D. Md. 1989) (FECA does not preclude relief under anti-discrimination statutes generally).

There may be a situation in which a claim under the Rehabilitation Act seeks to question compensation awarded under FECA, which would violate § 8128(b)(2)'s prohibition on judicial review of compensation awarded under FECA. However, that situation is not before this Court. The Court holds that a plaintiff who has received FECA benefits, including being offered an alternate position due to injuries sustained at the workplace, may also bring a claim for reasonable accommodation under the Rehabilitation Act arising from the same injury that led to the receipt of FECA benefits. Courts do not lack jurisdiction to consider such a claim for reasonable accommodation.

In sum, there are two possible sections of FECA that could arguably deprive courts of jurisdiction to adjudicate a claim for reasonable accommodation brought pursuant to the Rehabilitation Act where a plaintiff has already received FECA benefits. Neither section provides such a jurisdictional bar. While the Eighth Circuit has held otherwise in *Meester*, that case is not binding on this Court and the Court rejects its reasoning for the reasons discussed above. Since the Court does have jurisdiction to consider Plaintiff's claim, the Court next considers the remainder of Defendant's Motion.

**B.  Defendant's Motion for Summary Judgment**

**1.  Standard**

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).  To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited by the movant do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).  The court resolves factual controversies in

favor of the nonmoving party; however, factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### 2. Interactive process claim

Defendant contends that to the extent that there is a requirement under the Rehabilitation Act for an employer and employee to engage in an interactive process to determine how to provide reasonable accommodations for a qualified disabled employee, he has complied with that obligation. *See* Def.'s Mot. 10-12. The Court agrees.

The Rehabilitation Act prohibits programs that receive federal funding from discriminating against an otherwise qualified individual with a disability. 29 U.S.C. § 794(a); *Kapche v. City of San Antonio*, 176 F.3d 840, 844 n.27 (5th Cir. 1999). To establish a claim under the Rehabilitation Act, a plaintiff must show that he: (1) is an individual with a disability; (2) is otherwise qualified to perform the job; (3) was employed in a program or activity that receives federal funding; and (4) was discriminated against solely because of his disability. *Hileman v. City of Dallas*, 115 F.3d 352, 353 (5th Cir. 1997); *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir. 1993).

"'In general . . . it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed.'"[1] *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996) (quoting 29 C.F.R. § 1630.9)). Once such a request is made, "the employer is obligated by law to engage in an 'interactive process': 'a meaningful dialogue with the employee to find the best means of accommodating that disability.'" *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009) (quoting *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 108 (1st Cir. 2005)). "The process thus requires 'communication and good-faith exploration.'" *Id.* (quoting *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 871 (6th Cir. 2007)). "When an employer does not engage in a good faith interactive process, that employer violates the ADA - including when the employer discharges the employee instead of considering the requested accommodations." *Id.* (citing *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)).

In this case, after Plaintiff notified Defendant of his injuries and physical limitations Garza initiated a meeting with Plaintiff and Boutte. Def.'s Proposed Undisputed Facts ¶ 77. At the meeting on December 16, 2008, the three discussed Plaintiff's physical limitations, and as a result, Plaintiff's duties at Sunrise Station were transferred to another city letter carrier. *Id.* ¶¶ 81-82. Although Garza prepared for the meeting by assessing positions that might be available to

---

[1]    The Americans with Disabilities Act ("ADA") and the Rehabilitation Act both prohibit employment discrimination against qualified individuals with disabilities, but the two statutes govern different entities: the ADA applies only to public entities, including private employers, whereas the Rehabilitation Act applies to federally-funded programs and activities. *Kemp v. Holder*, 610 F.3d 231, 234-35 (5th Cir. 2010). Both statutes are judged under the same legal standards, *id.*, and jurisprudence interpreting either is applicable to both. *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002). Therefore, the Court cites to authority interpreting language in the ADA to interpret analogous language in the Rehabilitation Act.

Plaintiff based on Plaintiff's physical limitations, *id.* ¶ 90, Garza nonetheless went through the Priority for Modified Assignment Worksheet with Boutte and Plaintiff at the meeting to find duties Plaintiff could perform within his limitations. *Id.* ¶ 91. Though Plaintiff's preference was to continue working at Sunrise Station, Defendant contends that no positions were available at Sunrise Station at the time of the meeting. *Id.* ¶ 92.

The day after the meeting, Plaintiff was offered a modified-duty assignment. *Id.* ¶ 93. After accepting and performing duties in accordance with his new assignment for two weeks, Plaintiff inquired as to whether he could return to Sunrise Station with a modified-duty assignment. *Id.* ¶¶ 107, 109. Garza, Boutte, and Plaintiff identified duties that Plaintiff could perform within his physical limitations at Sunrise Station. *Id.* ¶ 109. Those duties were previously being performed by a city letter carrier at the time of the December 16, 2008, meeting, but had recently become available because that city letter carrier had suffered a heart attack. *Id.* ¶¶ 111-12. Plaintiff ultimately accepted without reservation an offer for a limited duty position at Sunrise Station in which he would perform duties within his physical limitations. *Id.* ¶ 121.

The Court finds that Defendant engaged in precisely the type of interactive process aimed at identifying accommodations for Plaintiff that the law requires. Defendant engaged in a "meaningful dialogue" with Plaintiff at the December 16, 2008, meeting in which Garza, Boutte, and Plaintiff discussed Plaintiff's limitations and identified available duties Plaintiff could perform within his physical limitations. *See EEOC*, 570 F.3d at 621. This meeting resulted in an offer for a modified-duty assignment. Two weeks later, the parties again engaged in an interactive process to find available duties at Sunrise Station that Plaintiff could perform within

his physical limitations.  That discussion resulted in Plaintiff accepting an offer from Garza to perform another limited duty assignment at Sunrise Station.

Plaintiff contends that Defendant failed to engage in the requisite interactive process because Defendant failed to abide by USPS's relevant internal policies.  Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss, or in the Alternative, Mot. for Summ. J. 13-14, ECF No. 28.  However, Plaintiff cites to no authority that supports the proposition that an employer's failure to comply with internal policies violates the Rehabilitation Act or the ADA, let alone the requirement to engage in an interactive process.  In fact, an employer's failure to comply with its own policies does not itself constitute a violation of the Rehabilitation Act.  *Smith v. Midland Brake, Inc.*, 138 F.3d 1304, 1310 (10th Cir. 1998), *rev'd on other grounds en banc*, 180 F.3d 1154 (10th Cir. 1999); *Quinones v. Potter*, 661 F. Supp. 2d 1105, 1124-25 (D. Ariz. 2009).

Defendant has complied with the requirement to engage in an interactive process. Therefore, the Court **GRANTS** summary judgment for Defendant with respect to the part of Plaintiff's claim alleging that Defendant failed to engage in the interactive process.

### 3.      Reasonable accommodation

Defendant contends that he has provided Plaintiff the reasonable accommodations he is obligated to provide under the Rehabilitation Act.  *See* Def.'s Mot. 12-14.  The Court agrees.

The Rehabilitation Act prohibits discrimination on the basis of disability, 29 U.S.C. § 794(a), and discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an . . . individual with a disability."[2]  42 U.S.C. §

---

[2]      The Rehabilitation Act incorporates standards used under the ADA to determine whether an employer has reasonably accommodated an employee's disability. 29 U.S.C. § 794(d); *Sanchez v. Henderson*, 167 F.3d 537, *2 n.16 (5th Cir.

12112(b)(5)(A).  The term "reasonable accommodation" means modification or adjustment to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that would enable a qualified individual with a disability to perform the essential functions of the position.  29 C.F.R. § 1630.2(o)(1)(ii).  A reasonable accommodation may include: (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, and other similar accommodations.  42 U.S.C. § 12111(9)(B).

When an employer reassigns a disabled employee so as to provide a reasonable accommodation, "'a position must first exist and be vacant'" in order for "'the accommodation of a reassignment to be reasonable.'" *Burch v. City of Nacogdoches*, 174 F.3d 615, 620 (5th Cir. 1999) (quoting *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997)).  Furthermore, "an accommodation that would result in other employees having to work harder or longer is not required." *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1094 (5th Cir. 1996).  Employers are not required to fundamentally alter their program, nor are they required to create a new job for a disabled employee.  *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir. 1995) (citing *Chiari v. City of League City*, 920 F.2d 311, 318 (5th Cir. 1991)).  Neither are they required to create light duty jobs to accommodate disabled employees because the "law does not require affirmative action in favor of individuals with disabilities.  It merely prohibits discrimination against qualified individuals with disabilities, no more and no less." *See Turco*, 101 F.3d at 1094 (citing *Daugherty*, 56 F.3d at 700).  The law "does not require an employer to

1998) (unpublished table) (per curiam).  Therefore, the Court cites authority from the ADA regarding reasonable accommodation since it applies to the Rehabilitation Act.

relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so." *Burch*, 174 F.3d at 621 (citations omitted). An employer is not required to provide the best accommodation, nor is it required to provide an employee's preferred accommodation. *EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009); 29 C.F.R. Pt. 1630, App., § 1630.9.

Defendant has provided Plaintiff reasonable accommodations at every stage of Plaintiff's injuries. After Plaintiff's first on-the-job injury in 1998, Plaintiff was given a medical restriction stating that he could not lift more than fifteen pounds. Def.'s Proposed Undisputed Facts ¶¶ 36-37. As a result of this limitation, other city letter carriers were asked to deliver parcels in excess of fifteen pounds since Plaintiff could not. *Id.* ¶ 38. After Plaintiff's second on-the-job injury, Defendant offered Plaintiff a modified-duty assignment which departed from duties of a city letter carrier. *See id.* ¶ 93. This assignment consisted of two hours of mail delivery and six hours of work performing collections at the main post office. *Id.* This modified-duty assignment involved tasks that were fully consistent with Plaintiff's physical limitations as identified by Plaintiff's physicians. *See id.* ¶¶ 52, 93. Two weeks after working this modified-duty assignment, Defendant offered Plaintiff another limited-duty position at Sunrise Station, Plaintiff's preferred location to work. *Id.* ¶¶ 105, 121. Once again, certain duties from Plaintiff's new route were given to another city letter carrier so that Plaintiff could take breaks consistent with his physician's recommendations and Plaintiff's physical limitations. *Id.* ¶¶ 123-24. Lastly, after Plaintiff expressed concerns about not being able to perform his work within eight hours, Garza instructed Boutte to modify Plaintiff's work assignment to seven hours of work. *Id.* ¶ 137. On occasion when Plaintiff was unable to complete his deliveries for the day, Boutte assigned

another city letter carrier to deliver the mail Plaintiff could not deliver. *Id.* ¶¶ 144-45.

The multiple accommodations Defendant offered Plaintiff are precisely the types of reasonable accommodations listed in 42 U.S.C. § 12111(9)(B). Defendant restructured Plaintiff's job, offered modified work schedules, and reassigned Plaintiff to vacant positions, assuming those positions were vacant. If those positions were not vacant, then Defendant exceeded its obligation, since Defendant is not required to create new positions in order to accommodate a disabled employee. *See Daugherty*, 56 F.3d at 700. Furthermore, Defendant on multiple occasions reassigned to other employees several of Plaintiff's duties that Plaintiff could no longer perform due to physical limitations. Such reassignment of duties is not required when offering reasonable accommodations. *See Turco*, 101 F.3d at 1094; *Burch*, 174 F.3d at 621. Finally, Defendant exceeded its requirement once more when it offered Plaintiff his desired job location at Sunrise Station. *See Agro Distrib.*, 555 F.3d at 471.

Because Defendant has provided Plaintiff with all the reasonable accommodations he was legally obligated to provide and more, the Court **GRANTS** summary judgment in favor of Defendant with respect to Plaintiff's claim alleging Defendant failed to provide reasonable accommodations. Since the Court has granted summary judgment with respect to both aspects of Plaintiff's claim for relief under the Rehabilitation Act, failure to engage in the interactive process and failure to provide reasonable accommodations, no part of Plaintiff's claim remains. Therefore, the Court does not reach the remainder of Defendant's Motion and **DENIES** Plaintiff's Motion as moot.

III.    **CONCLUSION**

For the foregoing reasons, Defendant's Motion, ECF No. 21, is **GRANTED**. Plaintiff's

Motion, ECF No. 25, is **DENIED** as moot.

    **The Clerk shall close the case.**

    **SO ORDERED**.

    **SIGNED** on this 1st day of September, 2011.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE